**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TERRY D. GANDALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 12-CV-82-JED-PJC |
| v. | ) |
| | ) |
| FLIGHTSAFETY INTERNATIONAL, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The Court has for its consideration the Motion for Summary Judgment (Doc. 30) filed by defendant, FlightSafety International, Inc. ("FlightSafety"). Plaintiff, Terry D. Gandall ("Gandall"), filed a response (Doc. 37), and FlightSafety filed a Reply Brief (Doc. 42) and a Notice of Supplemental Authority (Doc. 48).

**I.    Background Facts**

The following facts are undisputed and are supported by evidence in the summary judgment record. Gandall was employed by FlightSafety as a Technician Simulator Maintenance I ("SimTech") from February 25, 2008 to April 27, 2010. Gandall worked in the Division which designs and manufactures flight simulators used to train private, commercial and military pilots. SimTechs perform testing on manufactured simulators before they are placed in the field. SimTechs are required to stand, walk, sit, climb, stoop, kneel, crouch, crawl, and climb stairs, and are regularly required to stand at least 50% of the time to perform the job. There are no desk jobs or full-time sit down positions in the SimTech area.

The written job description for his position specifically identified "essential duties and responsibilities," which are "essential to the successful and satisfactory performance of [the] job." (Doc. 30-2). One of those essential duties included "adher[ence] to a work schedule

including prompt and regular attendance." (*Id.*). Gandall agrees that "attendance at the work site is essential to perform the functions of a [SimTech]." (Doc. 37 at 23). There are no floating or part-time employees available to cover for absent SimTech employees. There are three shifts of SimTech employees working 24 hours per day on overlapping shifts: 7:30 a.m. to 4:30 p.m.; 4:00 p.m. to 1:00 a.m.; and 11:30 p.m. to 8:00 a.m. Gandall was assigned to the first shift.

Gandall asserts that he is disabled by virtue of "heart disease with resulting circulatory issues." (Doc. 37 at 12). Gandall suffered from resulting leg cramps. Gandall was frequently absent from work, and he generally provided notice of his absences by voicemail or phone call on the day of the absence. He ultimately requested and was granted intermittent FMLA leave in mid-2009 and the physician paperwork submitted with his request indicated that he may need a few hours weekly or bi-weekly for medical issues. He received a medical release on November 16, 2009, to return to work full-time, without restrictions, but he continued to miss significant work. He exhausted his FMLA leave by November 30, 2009. After he used all of his FMLA leave, Gandall continued to be frequently absent from work into 2010.

For a short time over 18 weeks, Gandall was temporarily assigned to a desk job in the Military Division ("Department 33") when a temporary job assignment was available. For two weeks of the 18-week period, he was brought back to the SimTech Division. While assigned to Department 33, Gandall missed over 23 days of work and his FMLA leave expired. After the expiration of the FMLA leave, he missed an additional 12 days and 18 hours while assigned to Department 33, and the Manager of Department 33 complained about Gandall's absences and at one point asked for another person to be assigned.[1] After the temporary job assignment, Gandall returned to work in the SimTech department. In total, following the expiration of his FMLA

---

[1] Gandall objected to FlightSafety's recitation of his work hours while on the desk job assignment, but he did not offer any evidence to dispute his above-noted absences from work.

2

leave, Gandall missed an additional 170 hours of work (equivalent to more than 21 full days of work) between December 2, 2009 and April 26, 2010.  Ultimately, Gandall's employment was terminated because of his excessive absences.  Gandall then brought claims under the Americans with Disabilities Act ("ADA"), claiming discriminatory termination and failure to accommodate.

## II.     General Standards Applicable to Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).  In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  The evidence of a non-movant is to be taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012).  The plain language of Fed. R. Civ. P. 56 mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.

The summary judgment procedure is "not . . . a disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327.  When the moving party has

carried its burden under Rule 56, its "opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 259.

## III.   Discussion

### A.   General ADA Framework

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination cases are generally subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). The plaintiff bears the initial burden of establishing a prima facie case of discrimination under the ADA. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate (1) that he is "disabled" within the meaning of the ADA, (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job, and 3) that he was discriminated

against because of his disability. *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1261 (10th Cir. 2009); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 748 (10th Cir. 1999).[2]

If the plaintiff meets that burden, then the defendant must offer a legitimate, non-discriminatory reason for the employment action. If the defendant satisfies that burden, the plaintiff then has the burden of demonstrating that the defendant's proffered reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802-03; *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Assuming a plaintiff meets his initial burden to show a prima facie case and the defendant offers a legitimate, non-discriminatory reason, the plaintiff then has to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). "Mere conjecture that the employer's reason is pretext . . . will not defeat a motion for summary judgment." *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

B.   *Disability*

For purposes of summary judgment, FlightSafety acknowledges that there is a fact issue as to whether Gandall is disabled within the meaning of the ADA. (Doc. 30 at 14). Accordingly, the Court will assume for purposes of this summary judgment analysis that Gandall is disabled within the meaning of the ADA.

---

[2] The specific formulation of the third element depends on the claim asserted. Where the claim is for wrongful termination, the plaintiff must establish that he was terminated "because of his disability," whereas the third element of a claim for failure to accommodate requires evidence that the employer failed to take "reasonable steps to reassign a qualified individual to a vacant position or a position the employer reasonably anticipates will become vacant in the fairly immediate future." *Bartee v. Michelin North American, Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004) (quoting *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1252 (10th Cir. 2004)).

      C.    *Gandall Could Not Perform Essential Functions of His Job, With or Without Reasonable Accommodation*

FlightSafety argues that Gandall cannot meet his burden to establish the second element, that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job. *See Mason v. Avaya Comm., Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004) (plaintiff has the burden to show he is able to perform the essential functions of his job); *Hennagir*, 587 F.3d at 1262 (same). "Essential functions" are "the fundamental job duties of the employment position," but not "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). Evidence of whether a particular function is essential includes, but is not limited to: "(i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3); *see also Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir. 2000).

To determine whether Gandall is "qualified" under the second element, the court considers two criteria. First, the court "must assess whether [plaintiff's] impairment prevented [him] from performing the essential functions of [his] job. If so, [the court] must then determine whether [he] might have nevertheless been able to perform those functions if the [defendant] provided [him] a reasonable accommodation." *Robert v. Board of County Comm'rs of Brown County, Kansas*, 691 F.3d 1211, 1216 (10th Cir. 2012).

Here, Gandall does not dispute that attendance and punctuality were essential functions of his job at FlightSafety. Indeed, the written job description at the time he began work as a

6

SimTech expressly included "adher[ence] to a work schedule including prompt and regular attendance" as "essential duties and responsibilities" of a SimTech. The parties also provided undisputed testimony of the human resources director that "attendance is an essential function of [FlightSafety's] jobs." (Doc. 37-5 at 6). Consistent with FlightSafety's essential job function of prompt and regular attendance under a work schedule, physical attendance in the workplace is itself generally considered an essential function. *See Mason*, 357 F.3d at 1119-20 (collecting cases establishing physical attendance as an essential function). "[A] regular and reliable level of attendance is a necessary element of most jobs." *Id.* (quoting *Tyndall v. Nat'l Educ. Centers Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)); *Thompson v. Cendant Corp.*, 130 F. Supp. 2d 1255, 1260 (N.D. Okla. 2001) ("It is well settled that regular and reliable job attendance is an essential job function in itself. . . .")

In this case, it is undisputed that Gandall was frequently absent from work, sometimes for weeks at a time, and he generally provided notice of his absences by voicemail or phone call on the day of the absence. He requested and was granted intermittent FMLA leave in mid-2009 and provided a medical release on November 16, 2009 for return to work full-time without restrictions. He missed additional days of work and exhausted his FMLA leave by November 30, 2009. After he exhausted all of his FMLA leave, Gandall continued to be absent from work on a frequent basis.³ Gandall missed 170 hours of work between December 2, 2009 and April 26, 2010. In light of his excessive absences, he was terminated. Two months before his termination, Gandall was counseled about his absences, and he signed a statement in which he agreed that his physician had placed no restrictions on his work. (Doc. 30-14). He also stated

---

³   For example, after his FMLA leave was spent between July 1 and November 30, 2009, Gandall was absent December 2, 9, 11, 14, 18, and 24, 2009, January 6, 8, 11, 15, 20, 26, February 2, 5, 8, 10, 16, 24, March 4, 9, 15, 24, and April 16, 23, and 26, 2010. (Doc. 30-13).

that "he should be able to come to work and perform [his] duties on a full time basis . . . [and] if not, [he] understand[s] that [FlightSafety] will not have a position for [him]." (*Id.*). Gandall acknowledged that he would have to show immediate and continued improvement in his attendance. (*Id.*). However, absences from work persisted until he was fired.

There is also undisputed evidence that Gandall's absences had adverse effects on FlightSafety and its personnel, as the absences required FlightSafety to juggle job assignments to ensure that jobs could be completed, and other team members had to "pick up the slack" for absent team members. (Doc. 30 at 8, ¶¶ 5-6; *id.* at 9, ¶ 11, which were undisputed). Such evidence is relevant to the essential functions inquiry. *See, e.g., Robert*, 691 F.3d at 1216 (strain on other employees where there are a limited number of employees available for performance of job function is relevant to the inquiry); *see also* 29 C.F.R. § 1630.2(n)(3)(iv) (consideration of consequences of not requiring employee to perform essential functions).

In the face of this evidence, Gandall does not dispute that he was unable to perform the essential, regular attendance function of his job as a SimTech. (*See* Doc. 37 at 16 [arguing only that he should have been accommodated]; *see also id.* at 23 [acknowledging "his inability to come to work"). However, he claims that he would have been able to perform the essential functions of the job if he had been provided a reasonable accommodation. With respect to possible accommodations, Gandall offers no specific evidence other than his subjective opinions of what he believes FlightSafety could have done. For example, he argues:

> There were several options available that could have provided [Gandall] with a reasonable accommodation. The evidence suggests as accommodations Gandall could have had his job restructured or a transfer. The transfer could have been to another department or to another shift. Additionally, [FlightSafety] could have provided Gandall additional full time or intermittent leave. (Doc. 37 at 19-20).

Gandall specifically asserts that FlightSafety could have allowed him to stay in the Military Division, where he had been previously placed on a temporary project and which had "allowed Gandall to remain seated while working and took pressure off his legs." (Doc. 37 at 20). But he has not presented any evidence that there was a position available in the Military Division after the completion of that temporary project. In fact, he acknowledges that the temporary task was completed in the Military Division, but argues that FlightSafety should have continued to "find tasks for Gandall to perform" within that Division. (Doc. 37 at 20).

The ADA does not require an employer to create an assignment or position, and reassignment is not required when the employee is not qualified for a vacant job, no vacancy existed, or reassignment would have been a promotion. *See White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995). "[T]he ADA does not require an employer to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker." *Id.* FlightSafety was not required to provide a permanent light duty position for Gandall. *See Matthews v. The Denver Post*, 263 F.3d 1164, 1169 (10th Cir. 2001). As noted, even while placed temporarily at the desk job in the Military Division, which allowed him to remain seated with less pressure on his legs, Gandall missed a significant amount of work. Thus, such an accommodation clearly did not and would not resolve his general inability to meet the essential function of regular job attendance.

Gandall also suggests that he could have been transferred to another shift, and he argues that because his leg cramps often plagued him at night and in the mornings for the first few hours he was awake, a shift change would have resolved the issue. However, there is no evidence that a position on another shift was available. There is likewise no evidence that a new shift would

have resolved the physical issues regarding Gandall's legs, given he suffered issues both at night and in the mornings (*see* Doc 42-1; Doc. 37 at 8, ¶ 29), and each of the three overlapping SimTech shifts would require work in the late evenings or the early mornings. It is also undisputed that, when Gandall called in to miss work, he more often than not would be absent for his entire shift, as opposed to only a few hours at the beginning of the shift, as Gandall suggested he needs for his leg cramps to resolve.

Gandall's suggestion that FlightSafety "could have provided Gandall additional full time or intermittent leave" also does not create a genuine issue that would prevent summary judgment. While an accommodation may include permitting an employee additional unpaid leave for necessary treatment, there was no evidence that any treatment would have improved his ability to attend work on a regular and consistent basis. His physician had released him to work without restrictions, but indicated that he may continue to have leg problems for an indefinite period of time. Gandall claims that his leg cramps were improving and he should have been given an unspecified additional amount of time to improve, but there is no evidence in the record to support that claim. The ADA does not require an employer to grant an employee indefinite leave as an accommodation. *Hudson v. MCI Telecomm. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996) (citing *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)).

While "a brief leave of absence for medical treatment or recovery can be a reasonable accommodation . . . [t]here are two limits on the bounds of reasonableness for a leave of absence." *Robert*, 691 F.3d at 1217-18 (citations omitted). "The first limit is clear: The employee must provide the employer an estimated date when she can resume her essential duties. Without an expected end date, an employer is unable to determine whether the temporary exemption is a reasonable one. The second is durational. A leave request must assure an

employer that an employee can perform the essential functions of her position in the 'near future.'" *Id.* at 1218 (citations omitted). Gandall did not provide any estimate to FlightSafety that he would be able to regularly attend work and perform the other essential functions of his job by a date certain or in the near future. Moreover, despite FlightSafety's requests for medical updates on his condition, FlightSafety was never provided information suggesting that conditions would change such that Gandall's attendance or ability to perform would improve. It is also undisputed that Gandall did not request that he be permitted to work part time or to change shifts, and he never requested any extended leave of absence after his FMLA leave expired. Gandall "has failed to present any evidence of the expected duration of [his] impairment as of the date of [his] termination," and he has accordingly failed to present a genuine issue of material fact for trial. *See Hudson*, 87 F.3d at 1169; *see also Thompson v. Cendant Corp.*, 130 F. Supp. 2d 1255, 1260 (N.D. Okla. 2001) ("plaintiff's request that [employer] accommodate her by granting unpredictable absence from work is not a reasonable accommodation"). The "essential function 'inquiry is not intended to second guess the employer or to require the employer to lower company standards.'" *Mason*, 357 F.3d at 1119 (quoting *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)).

With respect to accommodation, Gandall also argues that FlightSafety was required to engage in an interactive process to determine whether a reasonable accommodation existed. (Doc. 37 at 16-17). In order to trigger the interactive process, the employee must first provide notice of the nature of his disability and specifically request information about possible reassignment. *See Woodman v. Runyon*, 132 F.3d 1330, 1345 (10th Cir. 1997). Assuming Gandall met the requirements to trigger that process (which is not established in the evidentiary record here), an alleged failure by FlightSafety to engage in that process would not prevent

11

summary judgment. It is well-established that "even if the employer failed to sufficiently engage in the interactive process, the employer can still prevail on summary judgment if the employee failed to 'show that a reasonable accommodation was possible and would have led to a reassignment position.'" *Frazier v. Simmons*, 254 F.3d 1247, 1261 (10th Cir. 2001) (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999) (en banc)). As noted above, Gandall failed to present evidence that he was qualified for any particular, available position. Even if he had been otherwise qualified for an available desk job, the undisputed evidence established that he was unable to regularly attend work even when on temporary assignment to a desk job. It was also undisputed that regular attendance was an essential function of all FlightSafety jobs. Summary judgment is thus appropriate. *See Frazier*, 254 F.3d at 1263 ("even if we assume a breakdown in the interactive process occurred, we hold Mr. Frazier did not 'show that a reasonable accommodation was possible and would have led to a reassignment position.' As such, summary judgment in favor of [employer] was proper.").

Because Gandall did not provide evidence supporting the second element – that he was qualified to perform the essential functions of his job – summary judgment is proper on both of his ADA claims, for wrongful termination and failure to accommodate, as that element is a prerequisite for both claims, as set forth above.

### D.     *No Evidence of Discriminatory Motive*

An additional reason exists for granting summary judgment on Gandall's wrongful termination claim. Even had he satisfied his burden to show he was qualified to perform the essential functions of his job, Gandall must also show that he was terminated "because of his disability," which requires that he "present some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th

Cir. 1997) (citations omitted). In other words, "the plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, [plaintiff] would be entitled to judgment as a matter of law." *Id.* While the burden is not onerous, it is also "not empty or perfunctory." *Id.* (quoting *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995)).

The only evidence Gandall offers to show that he was terminated "because of" his disability is the deposition testimony of the human resources director for FlightSafety. She testified as follows:

> Q. . . . Would you tell me each reason that you would have said yes for Mr. Gandall to be terminated?
>
> A. His inability to come to work and do the job.
>
> Q. Anything else?
>
> A. No, that's it. Attendance is an essential function of our jobs. We have to have him here.

(Doc. 37-5 at 6). Gandall argues that this testimony reflects some discriminatory intent based upon his disability. The Court disagrees. The human resources director was clearly referring to Gandall's attendance problems, i.e. that he did not consistently come to work, as she expressly referenced "[a]ttendance [as] an essential function of our jobs." (Doc. 37-5 at 6).

Gandall admits that he "was terminated because of his inability to come to work and do his job as a SimTech" (Doc. 37 at 11, ¶ 63), and he failed to dispute paragraph 26 of FlightSafety's undisputed facts, which states that he "was terminated because of his excessive absences" (Doc. 30 at 12, ¶ 26). Yet, Gandall states that he "believes the evidence in this case points directly to [a] discriminatory reason for [his] termination . . . [because the testimony of the human resources director] indicates that she was aware of his physical condition and his inability

to come to work." (Doc. 37 at 23). This is not evidence of a discriminatory motive. Even assuming such evidence were enough to establish the third element necessary for a prima facie case of discrimination (which it does not), it is not enough to establish pretext where, as here, FlightSafety has provided significant, undisputed evidence that Gandall's employment was terminated because of his excessive absences – a legitimate, non-discriminatory business reason. *See, e.g., Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) ("Mere conjecture that an employer's reason is pretext . . . will not defeat a motion for summary judgment."); *Thompson*, 130 F. Supp. 2d at 1261 (conjecture and speculation are insufficient to establish pretext).

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (Doc. 30) is **granted**. A separate judgment will be entered forthwith.

IT IS FURTHER ORDERED that the parties' pending motions in limine (Doc. 36, 38) are **moot**.

IT IS SO ORDERED this 5th day of June, 2013.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE